UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EVELYN TUCKER,

    Plaintiff,

v.

    Case No. 09-14102
    Honorable Thomas L. Ludington

STERLING JEWELERS, INC.,

    Defendant.
_____ /

# OPINION AND ORDER DENYING
# PLAINTIFF'S MOTION TO VACATE ARBITRATION DECISION

This civil action arises out of Defendant Sterling Jewelers terminating the employment of Plaintiff Evelyn Tucker. After Plaintiff filed suit in this Court alleging that she was terminated because of her race, the parties submitted a stipulated order staying the proceedings "to give the parties the opportunity to proceed under Defendant's mandatory alternative dispute resolution program known as RESOLVE, up through and including arbitration." ECF 13. The parties then proceeded to arbitration, where the arbitrator dismissed Plaintiff's claim based on the RESOLVE Program's one year limitation of actions provision.

Plaintiff now moves to "vacate the arbitration decision and remand this matter back to the arbitrator for further proceedings." ECF No. 21. Although the Court may not have interpreted the stipulation as an agreement to waive the issue of arbitrability or delegate its resolution to the arbitrator, Plaintiff nevertheless acknowledges that she agreed to arbitrate. Accordingly, because the arbitrator was interpreting the parties' agreement, and because Plaintiff has not demonstrated that the arbitrator exceeded his powers or manifestly disregarded established precedent in reaching his decision, the motion to vacate the arbitration decision will be denied.

**I**

**A**

In May 1987, Plaintiff began working for Defendant, which operates retail jewelry stores nationwide. Eleven years later, in June 1998, Defendant instituted a mandatory alternative dispute resolution program for all employees entitled "RESOLVE." Defendant required that all of its employees agree to participate in the program as a condition of continued employment. The program's dispute resolution procedure involved three steps:

Step 1. Filing a Complaint

> An employee who believes he/she has been subjected to an unlawful employment action, harassment, or termination must contact the RESOLVE Program Administrator and complete a RESOLVE Program Complaint Form.
>
> The party must specify in the form how he/she has been subjected to an unlawful action and the specific relief sought. Unless prohibited by law, the claim must be fully completed, postmarked and sent to the RESOLVE Program Administrator within one (1) year of the alleged unlawful action.
>
> After an investigation, a response (answer) will be postmarked to the employee no later than 30 days after receipt of the complaint form. If the employee is satisfied with the response no further action is required. . . . If not satisfied by the outcome of Step 1, an employee may proceed to Step 2. . . .

Step 2. Appeal For Further Review

> Step 2 allows the employee to appeal for further review if he/she is not satisfied with the outcome of Step 1.
>
> In Step 2, the case is assigned by the RESOLVE Program Administrator to a skilled outside Mediator or a 5-member review panel.
>
> As in Step 1, if the employee is satisfied with the response, no further action is required.
>
> If not satisfied by the outcome of Step 2, an employee may proceed to Step 3. . . .

> Step 3. Arbitration
>
> Step 3 allows the employee to file for neutral and binding arbitration if the employee is dissatisfied with the decision or proposed resolution in Step 2. . . .
>
> Step 3 involves a formal hearing where both the employee and the Company may utilize legal representation.  This step utilizes a jointly selected outside/neutral arbitrator from the American Arbitration Association. . . .
>
> The arbitration will take place at a mutually convenient time and location near the site where the complaint arose and shall be governed by the Federal Arbitration Act . . . .
>
> The Arbitrator will hear the case and render a decision. The arbitrator can award all remedies available as provided by law.  The decision of the Arbitrator will be final and binding upon the employee and the Company.
>
> Arbitration is the final step.  Neither party may file a lawsuit instead of using the RESOLVE Program or accepting the Arbitrator's final decision. . . .
>
> Questions and Answers . . .
>
> [Q:] Do I need to file an administrative charge to initiate a claim with RESOLVE?
>
> [A:] Although you retain the right to file such a charge, you do not need to file a charge to initiate a claim under RESOLVE.  Further, if you do file a charge or any other action in any other forum, the time limitations contained in RESOLVE will continue to run.  In order to bring a claim under RESOLVE, you must request, complete, postmark and send a Step 1 claim form within one year of the alleged unlawful activity regardless of any other types of actions you might file.  Failure to do so, will result in a complete bar to your claim. . . .

Def.'s Opp'n to Mot. to Vacate Ex. A, at 16–19, ECF No. 26-2 (internal formatting omitted) ("Def.'s Opp'n").

In June 2008, Defendant terminated Plaintiff.  As a part of a proposed severance package, Defendant offered Plaintiff a confidential agreement and general release which referenced the RESOLVE Program.  The following month, Plaintiff wrote to Defendant's vice president of employee relations inquiring about the RESOLVE Program:

> Please be advised that during my recent review of the purposed [sic] confidentiality agreement and general release, I discovered that your release makes reference to a "resolve" program. I would kindly ask that you provide to me immediately a copy of all documentation regarding this RESOLVE Program so that I can have an idea as to what you are referring.

*Id*. at 38. Defendant responded by sending Plaintiff a brochure setting forth the terms quoted above.

**B**

In March 2009, Plaintiff filed a charge of race discrimination against Defendant with the Equal Employment Opportunity Commission. In July, the EEOC issued a right to sue letter. On October 16, 2009, Plaintiff filed suit in this Court, alleging that she was terminated on the basis of her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ECF No. 1. Paragraph 18 of the complaint asserted that "this Court has subject matter jurisdiction over the federal questions being raised in this matter pursuant Title VII of the Civil Rights Act of 1964." Defendant answered, denying liability. ECF No. 6. "In answer to the allegations contained in Paragraph 18," Defendant wrote, "Plaintiff was subject to a mandatory alternative dispute resolution program known as the RESOLVE Program, which includes binding arbitration."

In December 2009, Defendant moved to stay the proceedings in favor of arbitration under § 3 of the Federal Arbitration Act. ECF No. 7. This section provides that a suit in federal court is to be stayed when a party raises "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. Noting that the first task a court must undertake in evaluating whether to stay proceedings for arbitration is whether the parties have agreed to arbitrate, Defendant outlined its decision to implement its mandatory dispute resolution program in 1998 and the manner in which employees were notified of the program's implementation.

Promotional literature, mandatory meetings, and posters prominently displayed in employee areas were among the methods used, Defendant observed, concluding that "there is no doubt that there is a valid, enforceable agreement to pursue employment-related claims through RESOLVE."  Plaintiff responded, opposing the stay.  ECF No. 11.  Observing that Defendant had merely moved to stay the proceedings, not compel arbitration, Plaintiff asserted:

> By Defendant's own admission, the Defendant has not asked this Court to make a dispositive ruling on the legal effect, if any, of the alleged arbitration brochure & flyer. . . .
>
> This Court cannot grant a motion and issue a stay based upon the evidence submitted to it, since Congress has made it clear that a stay can be issued by this Court only if satisfactory evidence has been submitted of an agreement in writing for such arbitration. . . .
>
> The burden of determining that 9 USC § 3 applies falls squarely upon the Defendant, and it is up to this Court to determine whether the statutory burden has been met.

Thus, in responding to the motion for a stay of the proceedings, Plaintiff raised the issue of arbitrability.

The issue of arbitrability was not ruled on by the Court, however.  Before the Court ruled on the pending motion, the parties submitted, and the court entered, a stipulation and order staying the proceedings.  ECF No. 13.  It states:

> It is stipulated and agreed by and between the parties to this matter, by their respective attorneys of record, that this action shall be stayed in order to give the parties the opportunity to proceed under Defendant's mandatory alternative dispute resolution program known as RESOLVE, up through and including arbitration.
>
> By entering into this Stipulation, neither party waives or relinquishes any of their rights, claims, or defenses in connection with this dispute.
>
> It is so ORDERED.

*Id*.  On February 26, 2010, Plaintiff submitted her "Step 1 complaint." It was denied. In May 2010, Plaintiff submitted her "Step 2 claim form." A review panel was assembled; it too denied her claim. The parties then moved to arbitration.

What happened thereafter is less clear to the Court for obvious reasons — the proceeding occurred before the arbitrator. Under the American Arbitration Association's Employment Arbitration Rules and Mediation Procedures, for example, the parties are to inform the arbitrator about the nature of the suit and the relief requested. To illustrate, the petitioner must file "a brief statement of the nature of the dispute; the amount in controversy, if any; the remedy sought; and requested hearing location." Am. Arb. Ass'n, *Employment Arbitration Rules and Mediation Procedures*, R-4(b)(1)(i) (2009), *available at* http://www.adr.org/sp.asp?id=32904. The respondent answers, offering a "brief response to the claim and the issues presented." *Id*. at 4(b)(2). The arbitrator may then permit discovery "by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute." *Id*. at R-9. "The parties may offer such evidence as is relevant and material to the dispute," the rules further provide, "and shall produce such evidence as the arbitrator deems necessary to an understanding and determination of the dispute." *Id*. at R-30. If deemed appropriate, the arbitrator may permit "the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case." *Id*. at R-27.

As best can be determined from the parties' papers, at some point in the arbitration proceeding the arbitrator permitted Defendant to file a motion to dismiss. Defendant did, arguing the claim was time barred because the RESOLVE Program requires that the Step 1 complaint be sent to the RESOLVE Program Administrator within one year of the alleged

unlawful action. Plaintiff was terminated in June 2008, Defendant noted, yet she did not send her Step 1 complaint to Defendant until March 2010.

The sole document responding to this motion furnished to the Court from the arbitration proceeding is a three-page pleading entitled "Claimant's Brief in Response to Motion to Dismiss." In this pleading, Plaintiff writes that she did not agree to the RESOLVE Program or its one year statute of limitations.

As best can be determined from the arbitrator's decision, Defendant replied that Plaintiff had agreed to the RESOLVE Program's terms, including its one year statute of limitations, for two independently sufficient reasons. First, she continued her employment for ten years after Defendant had notified her of the program and its terms in 1998. Second, even if she did not agree to the RESOLVE Program in 1998, she did agree to its provisions in February 2010 when she signed the stipulation providing: "It is stipulated and agreed by and between the parties . . . to proceed under Defendant's mandatory alternative dispute resolution program known as RESOLVE." The arbitrator did not address Defendant's first argument. Accepting Defendant's second argument, the arbitrator dismissed Plaintiff's claim. The Arbitrator elaborated:

> Pursuant to the RESOLVE Program Arbitration Rules providing for dispositive motions, [Defendant] filed its Motion to Dismiss on February 14, 2011 asserting that [Plaintiff's] claim is time barred pursuant to the terms of the RESOLVE Program which requires an employee asserting a claim under the RESOLVE Program to file her written program claim form within one year of the alleged unlawful action.
>
> [Plaintiff] filed her Brief in Response to [Defendant's] Motion to Dismiss on March 14, 2011, denying there is any agreement to the one (1) year statute of limitations in the RESOLVE Program. . . .
>
> The parties' written stipulation states that the parties will proceed under the RESOLVE Program. The parties' stipulation to proceed under the RESOLVE Program without waiving any rights, claims, or defenses does not abrogate the RESOLVE Program's express written term that are applicable to this claim. The

> stipulation does not allow either party to pick or chose [sic] which rules and procedures of the RESOLVE Program should be applied. The stipulation does not state that the parties will proceed under only a part of the RESOLVE Program's Rules and Procedures. Further, there is no agreement that that [sic] proceeding under the RESOLVE Program waives, nullifies, or restarts the program's time limitations regarding [Plaintiff's] claim. . . .
>
> Although [Plaintiff] argues that she never agreed to the one (1) year limitation period in the RESOLVE Program, it is clear that [Plaintiff] stipulated to proceed under the RESOLVE Program after she and her counsel had notice of the program's terms, including, the applicable time limitations.
>
> Based upon the arguments and materials submitted by the parties, there is a valid and enforceable agreement to proceed under the terms of the RESOLVE Program which includes the one (1) year time period in which [Plaintiff] could bring her claims, but failed to do so.
>
> . . . [Defendant] is entitled to summary disposition as a matter of law based upon the parties having entered into a valid and enforceable arbitration agreement under the provisions of the RESOLVE Program.

Pl.'s Mot. to Vacate Ex. B, at 2, 7–8, ECF No. 21-3.

Plaintiff criticizes the arbitrator's interpretation of the stipulation for several reasons. First, she criticizes the arbitrator for not addressing the question of arbitrability Plaintiff framed in this Court before the stipulation was filed. That is, she criticizes the arbitrator avoiding the question of whether Plaintiff agreed to the RESOLVE Program in 1998. It is unclear, however, the extent to which Plaintiff explained to the arbitrator that this was at issue and why it should affect the arbitrator's interpretation of the stipulation. Second, she criticizes the arbitrator's interpretation of the stipulation as incorporating all the terms of the RESOLVE Program, not simply the three stages of dispute resolution. She observes that under the arbitrator's interpretation, Plaintiff "was barred from pursuing her claim almost eight months before she entered into the stipulation." Nonetheless, evidently, no effort has been made to bring these concerns to the attention of the arbitrator.

Instead, Plaintiff now moves to vacate the arbitrator's decision and remand the case to arbitration. In support, Plaintiff makes three arguments. First, she argues, the decision should be vacated under Michigan law as contrary to public policy. Arguing in the alternative, Plaintiff next contends that under the Federal Arbitration Act the decision should be vacated as the arbitrator's decision is in contravention of controlling principles of law. Finally, Plaintiff argues, the decision should be vacated under federal law because the arbitrator acted with "manifest disregard" of established precedent. Plaintiff's arguments are unpersuasive.

## II

### A

"An agreed order, like a consent decree, is in the nature of a contract, and the interpretation of its terms presents a question of contract interpretation." *City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1227 (6th Cir. 1995). "When interpreting contracts," as a general matter, courts will "enforce the parties' contractual choice of governing law." *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 596 (1991)). "Where a writing refers to another document, that other document, or the portion to which reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument. The incorporated matter is to be interpreted as part of the writing." Richard A. Lord, 11 *Williston on Contracts* § 30:25 (4th ed. 2011) (footnote omitted).

Here, the stipulated order provides that the parties agree "to proceed under Defendant's mandatory alternative dispute resolution program known as RESOLVE." ECF No. 7. The program, in turn, provides that the arbitration "shall be governed by the Federal Arbitration Act." Def.'s Opp'n Ex. A, at 17. Thus, the stipulated order effectively incorporated the parties' choice

of law, and the arbitrator's decision is governed by the Federal Arbitration Act. Plaintiff's argument that Michigan law — not the Federal Arbitration Act — applies is unpersuasive.

**B**

"When courts are called on to review an arbitrator's decision, the review is very narrow; it is one of the narrowest standards of judicial review in all of American jurisprudence." *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 305 (6th Cir. 2008) (internal quotation marks and alterations omitted) (quoting *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005)). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

Section § 9 of the Federal Arbitration Act establishes a presumption that an arbitration decision should be confirmed. *See Nationwide*, 429 F.3d at 643 (citing 9 U.S.C. § 9). "Under the terms of § 9, a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11. Section 10 lists grounds for vacating an award, while § 11 names those for modifying or correcting one." *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). Section 10, in turn, provides that a court may vacate an arbitration award on four grounds:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Moreover, "the statutory grounds are exclusive." *Hall St. Assocs.*, 552 U.S. at 578; *see also id.* at 583 ("[S]ections 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification."); *but see Dealer Computer Servs., Inc. v. Dub Herring Ford*, 547 F.3d 558, 561 n.2 (6th Cir. 2008) ("A court may also vacate an award on non-statutory grounds if the arbitration panel demonstrates a manifest disregard of the law." (internal quotation marks omitted)); *Martin Marietta Materials v. Bank of Okla.*, 204 F. App'x 360, 362–63 (6th Cir. 2008) (internal citations omitted) ("Since *Hall Street*, two of our sister circuits have suggested different answers to the question whether the 'manifest disregard' standard retains continuing vitality. For present purposes, we will resolve the dispute as the parties have presented it to us — namely, with the assumptions . . . that the 'manifest disregard' standard continues to apply.").

As noted above, Plaintiff moves to vacate the arbitrator's decision on three grounds: (1) pursuant to Michigan state law; (2) pursuant to § 10(4); and (3) pursuant to the "manifest disregard of the law" line of cases. Pl.'s Br. 5–11. As noted, Plaintiff's first argument does not state a cognizable ground for vacating the decision. *See Hall St. Assocs.*, 552 U.S. at 578. Plaintiff's second and third arguments are unpersuasive.

## C

### 1

Subsection four of 9 U.S.C. § 10 provides that a court may vacate an arbitration decision "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." "Arbitrators exceed

their power when they act beyond the material terms of the contract from which they primarily draw their authority, or in contravention of controlling principles of law." *Elec. Data Sys. Corp. v. Donelson*, 473 F.3d 684 (6th Cir. 2007) (internal quotation marks omitted) (quoting *Saveski v. Tiseo Architects, Inc.*, 682 N.W.2d 542, 544 (Mich. Ct. App. 2004)). If, however, "the arbitrators decline to explain their resolution of certain questions of law, a party seeking to have the award set aside faces a tremendous obstacle. If a court can find any line of argument that is legally plausible and supports the award then it must be confirmed." *Merrill Lynch v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995).

In this case, Plaintiff's principal argument is that the arbitrator acted in contravention of the court's holding in *Thurman v. DaimlerChrysler*, Inc., 397 F.3d 352 (6th Cir. 2004). Specifically, the arbitrator did not recognize that "an agreement to shorten a statute of limitations violates public policy if the agreement fails to afford the aggrieved party with a reasonable amount of time to investigate and file an action in the context of a federal cause of action." Pl.'s Br. 7, 9, 11 (citing *Thurman*, 397 F.3d at 354–59). Plaintiff's reliance on *Thurman* is misplaced.

In *Thurman*, an employer included a six-month limitation of actions provision in its employment applications. 397 F.3d at 358. An employee was sexually harassed in September and October 1999. *Id*. at 354–55. She first filed suit in June 2000, but the suit "was dismissed by the district court due to the repeated failure of the [the employee's] counsel to appear and participate in court ordered conferences." *Id*. at 355. The employee then refiled suit in August 2000, arguing that the provision was unenforceable because it was an unreasonable term in an adhesion contract. *Id*. at 357. Specifically, the employee argued that "the clause is unreasonable because there was not a sufficient opportunity to investigate her claims and determine the extent of her damages." *Id*. at 358. Disagreeing, the court held that six months provided the employee

with "ample time to investigate her claim and determine her damages." *Id*. The court noted that the employee had been "referred to medical and psychological treatment one week after the first incident," had "filed a complaint with the Michigan Department of Civil Rights on September 29, 1999," had "filed a criminal complaint . . . on October 20, 1999," and had even "filed the first lawsuit encompassing the underlying events within the abbreviated limitations period." *Id*.

The *Thurman* rule of reasonableness, however, applies only to adhesion contracts. *See id*. at 357. And the arbitrator did not address Plaintiff's argument that she did not agree to the RESOLVE Program in 1998. Rather, the arbitration decision was based on the arbitrator's reading of the non-adhesive stipulation.

Also unpersuasive is Plaintiff's argument that "the Arbitrator's conclusion regarding the legal effect of the February 8, 2010, stipulation resulted in a practical abrogation of Plaintiff's right to bring her Title VII cause of action, since the Arbitrator found that Plaintiff was barred from pursuing her claim almost eight (8) months before she entered into the stipulation." Pl.'s Br. 8. While Plaintiff's factual assertion may be accurate, it nevertheless follows from the arbitrator's interpretation of the stipulation. For the Court to intervene would be flatly inconsistent with the fundamental principle that "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *AT&T v. Conception*, —— U.S. ——, ——, 131 S. Ct. 1740, 1745 (2011) (internal citation omitted) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).

Likewise unpersuasive is Plaintiff's argument that the arbitrator misinterpreted the arbitration agreement's provision that "neither party waives or relinquishes any of their rights, claims, or defenses in connection with this dispute." Pl.'s Br. 10. The law is settled that the "question of contract interpretation is for the arbitrator." *Mich. Family Res., Inc. v. Serv. Emps.*

*Int'l Union Local 517M*, 475 F.3d 746, 750 (6th Cir. 2007) (quoting *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1363, 4 L.Ed.2d 1432 (1960)); *see also Sears, Roebuck & Co. v. Teamsters Local Union No. 243*, 683 F.2d 154, 155 (6th Cir. 1982) ("This court has consistently adhered to the principle that an arbitrator may construe ambiguous contract language.").

Here, while Plaintiff acknowledges that the arbitrator was interpreting the stipulation, she asserts that he misinterpreted it. Plaintiff contends that the no-waiver provision means that the RESOLVE Program's one year limitation of actions provision was excluded from the parties' agreement to arbitrate. Resolving this ambiguity, however, is for the arbitrator, not this Court.

Likewise, one might reasonably interpret the stipulation's non-waiver language to either mean that Plaintiff was delegating the question of arbitrability to the arbitrator or, alternatively though equally reasonably, intended to preserve the question for this Court. Plaintiff, however, disclaims the latter interpretation with the requested relief in her motion to vacate. Maintaining that this dispute is subject to arbitration, Plaintiff requests that the Court vacate the arbitration decision and order the parties back to the arbitrator (with an order adopting Plaintiff's preferred interpretation of the ambiguities in the stipulation). Plaintiff's motion to vacate the arbitrator's decision pursuant to 9 U.S.C. § 10(4) shall be denied.

**2**

Turning to Plaintiff's alternative, "manifest disregard" argument, the Court observes that it is not obvious that manifest disregard of the law remains a viable independent ground for setting aside an arbitration decision. *See generally* Leigh F. Gill, Note, *Manifest Disregard After Hall Street: Back From the Dead — The Surprising Resilience of a Non-Statutory Ground for Vacatur*, 15 Lewis & Clark L. Rev. 265 *passim* (2011) (discussing circuit split in *Hall Street*'s

wake); Hiro N. Aragaki, *The Mess of Manifest Disregard*, 119 Yale L.J. Online 1 *passim* (2009), http://yalelawjournal.org/2009/09/29/aragaki.html (same).

In *Hall Street*, the Court was presented with the question of "whether statutory grounds for prompt vacatur and modification may be supplemented by contract." 552 U.S. at 578. Answering in the affirmative, the Court held that "the statutory grounds are exclusive." *Id*. A separate question — and one which the Court did not have before it — is whether the statutory grounds may be supplemented by judicially-created grounds, such as "manifest disregard." In passing the Court observed that some circuits — based on a statement in *Wilko v. Swan*, 346 U.S. 427 (1953)[1] — had "recognize[ed] 'manifest disregard of the law' as a further ground for vacatur on top of those listed in § 10." *Hall St. Assocs.*, 552 U.S. at 585 (quoting *Wilko*, 346 U.S. at 436–37). The Court opined: "we see no reason to accord it [that] significance." *Id*.

Some courts have read this statement as vitiating the "manifest disregard" ground of vacatur. *See, e.g.*, *Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 350 (5th Cir. 2009) (rejecting manifest disregard as an independent ground due to *Hall Street*). The Sixth Circuit, however, has read *Hall Street* in a more restrained fashion, suggesting that "manifest disregard" may have continuing vitality. *See, e.g.*, *Grain v. Trinity Health, Mercy Health Servs., Inc.*, 551 F.3d 374, 380 (6th Cir. 2008) ("It is true that we have said that 'manifest disregard of the law' may supply a basis for *vacating* an award, at times suggesting that such review is a 'judicially created' supplement to the enumerated forms of FAA relief.").

---

[1] In *Wilko*, the Court "remarked that '[p]ower to vacate an [arbitration] award is limited,' and went on to say that 'the interpretations of the law by the arbitrators in contrast to manifest disregard [of the law] are not subject, in the federal courts, to judicial review for error in interpretation.' " *Hall St. Assocs.*, 553 U.S. at 584 (internal citations omitted) (quoting *Wilko*, 346 U.S. at 436–37).

Assuming that manifest disregard of the law may yet supply a basis for vacating an award in an appropriate case, it does not do so here. Under Sixth Circuit precedent, "[a]n arbitration panel acts with manifest disregard if (1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." *Elec. Data Sys. Corp. v. Donelson*, 473 F.3d 684 (6th Cir. 2007) (quoting *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000)).

Here, Plaintiff asserts only that the arbitrator acted with manifest disregard for the same legal principle discussed above — namely, the *Thurman* rule that "an agreement to shorten a statute of limitations violates public policy if the agreement fails to afford the aggrieved party with a reasonable amount of time to investigate and file an action in the context of a federal cause of action." Pl.'s Br. 11. As noted above, Plaintiff does not explain why *Thurman* applies to a non-adhesive stipulation executed by counsel for both parties. Plaintiff's motion to vacate the arbitrator's decision on this ground shall be denied as well.

### III

Accordingly, it is **ORDERED** that the motion to vacate the arbitration decision (ECF No. 21) is **DENIED**.

                                                            s/Thomas L. Ludington
                                                            THOMAS L. LUDINGTON
                                                            United States District Judge

Dated: February 10, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 10, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS